Case 2:22-cv-00026   Document 3   Filed on 11/08/22 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
November 09, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff/Respondent, | § | |
| | § | |
| v. | § | CRIMINAL NO 2:18-1336-1 |
| | § | CIVIL NO. 2:22-26 |
| JAMES ROYE BRYAN TOWNZEN, | § | |
|     Defendant/Movant. | § | |

**MEMORANDUM OPINION & ORDER**

Defendant/Movant James Roye Bryan Townzen filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. D.E. 429. Pending before the Court is the United States of America's (the "Government") Motion for Summary Judgment (D.E. 443), to which Movant did not respond.

**I. BACKGROUND**

In January of 2018, Homeland Security Investigations (HSI) was contacted regarding an international mail package containing a kilogram of the synthetic cannabinoid 5F-MDMB-PINACA, a Schedule I controlled substance, which Customs and Border Protection (CBP) intercepted on its way from Hong Kong to Corpus Christi. HSI's investigation revealed that individuals associated with the Done Right AC Company (Done Right) in Corpus Christi were involved in a conspiracy to traffic synthetic cannabinoids, including Movant; his girlfriend, Victoria Martinez (Martinez); his uncle, Charles Warren Callis (Callis); his brother, Raymond Shane Townzen (S. Townzen); Michael Llamas (M. Llamas); Benjamin Llamas (B. Llamas); Raymond Reyes (Reyes); John Perez (Perez); and Joe McNabb (McNabb).

In late 2017, Movant began ordering synthetic cannabinoid chemicals from overseas and spraying it on inert leaf material to produce a final smokeable synthetic cannabinoid product that was sold to users. At the time, Movant was working for Callis at Done Right and was renting a

back room at the business to produce the synthetic cannabinoid finished product. Movant transferred the finished product to S. Townzen, Perez, and M. Llamas, who sold it. Townzen was dating Martinez in January of 2018, and they moved in together.

In April of 2018, Movant was arrested and placed in state custody for a probation violation. Martinez took over the manufacturing of the synthetic cannabinoid, while Movant continued giving orders and instructions to Martinez, Callis, and M. Llamas through jail calls and written letters. Movant's letters to Martinez included instructions on ordering, manufacturing, and distribution through M. Llamas. Recorded jail calls between Movant and Martinez included information about where to order the synthetic cannabinoids and instructions to order the chemical from overseas and to break orders down into four 500-gram packages to be sent to different addresses. Martinez ordered multiple packages of chemicals and had them delivered to several addresses in Corpus Christi. She gathered the core chemicals, the leaf, acetone, and flavoring and manufactured the final product at Done Right. M. Llamas picked up the drugs at Done Right and used B. Llamas to help sell the drugs.

Using search warrants for Facebook, email, and electronic devices associated with members of the conspiracy, agents discovered that M. Llamas, B. Llamas, S. Townzen, Perez, and McNabb utilized Facebook profiles and marketed the synthetic cannabinoids online. Agents also discovered through letters from Movant to Martinez that Martinez gave the profits of the drug trafficking organization to Callis, who kept a percentage and wrote Martinez company checks to launder the funds. Callis also discussed a deal he was attempting to make with Movant where M. Llamas would deliver the synthetic cannabinoid to Callis and he would use Reyes, a former employee, to find buyers in the Kingsville area.

On November 28, 2018, a grand jury indicted Movant, Martinez, M. Llamas, B. Llamas, Callis, Reyes, Perez, S. Townzen, and McNabb with conspiracy to possess with intent to distribute

a synthetic cannabinoid mixture and substance (5F-MDMB-PINACA) from on or about October 1, 2017, through October 2, 2018, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). Movant pled guilty without a plea agreement.

Based on letters between Movant and Martinez detailing the recipe for the synthetic cannabinoid final product, the Presentence Report (PSR, D.E. 178) estimated that 3.3 grams of pure synthetic cannabinoid ("core chemicals") produced 1,000 grams of manufactured synthetic cannabinoid. The bulk of one 500-gram package (the remaining 379 grams aside from 121 grams of core chemicals recovered at Martinez's residence) was manufactured into final product, yielding 19,038 kilograms of converted drug quantity. Another 500-gram package tracked by agents was also reasonably believed to have been manufactured into final product, producing 25,217 kilograms of converted drug quantity. The conversion in the PSR was the amount of total final product in grams multiplied by 167 according to the conversion table in U.S.S.G. § 2D1.1 cmt. n. 8(D) Drug Conversion Tables, then converted to kilograms. The PSR also converted 991 grams of core chemicals intercepted by CBP in January of 2018, 121 grams of core chemicals recovered on August 9, 2018, at Martinez's residence, and 500 grams of core chemicals recovered by law enforcement in January of 2019, multiplying the total 1,612 grams of core chemicals by 167 per gram. The total converted drug weight was 44,524 kilograms.

Using the 2018 edition of the Guidelines Manual, the PSR calculated Movant's base offense level at 36 and added a two-level enhancement under U.S.S.G. §§ 2D1.1(b)(7) for distributing a controlled substance through mass-marketing by means of an interactive computer service, based on the use of Facebook accounts to advertise and sell the synthetic cannabinoid; a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance, based on renting the room at Done Right to use for manufacturing the drugs; and a four-level enhancement under U.S.S.G. § 3B1.1(a)

3

because Movant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. After credit for acceptance of responsibility, Movant's total offense level was 41.

Movant filed several written objections to the PSR, including the calculation of his base offense level and the 2-level enhancement for distribution of a controlled substance through mass-marketing by the use of an interactive computer service. He also requested a downward departure in accordance with U.S.S.G. § 2D1.1 cmt. n. 27(E).

At the first sentencing hearing on October 16, 2019, the Government presented testimony from Codefendant Martinez, HSI Special Agent Kirkland (the case agent), DEA pharmacologist Dr. Kalejaiye, and Corpus Christi Police Officer Pelfrey regarding the scope of the conspiracy and the drug quantity determination. At the second sentencing hearing on December 17, 2019, the Court addressed Movant's objections to the drug quantity calculation and found as follows: (1) the 1:167 conversion ratio in the Guidelines was appropriate and had been well established by the courts; (2) 3.3 grams of core chemical to 500 grams of finished product was reasonable; and (3) a converted drug weight range of 10,000 kilograms to 30,000 kilograms was the most reasonable finding, which established a base offense level of 34. The Court also overruled Movant's objection to the mass-marketing enhancement.

With a total offense level of 39 and a criminal history category of IV, Movant's advisory Guidelines range was calculated to be 360 months to life; however, the statutory maximum sentence was 240 months, which became his Guidelines range. Movant requested a downward departure or variance based on the 18 U.S.C. § 3553 factors and requested a 120-month sentence, while the Government asked for 240 months. The Court ultimately sentenced Movant to 222 months' imprisonment and 3 years' supervised release, partially granting Movant's request for a downward variance.

Movant appealed to the Fifth Circuit Court of Appeals, challenging his sentence by alleging an erroneous drug quantity calculation as well as substantive unreasonableness. *United States v. Townzen*, 837 F. App'x 312 (5th Cir. 2021). The Fifth Circuit affirmed the judgment and sentence on February 24, 2021. *Id.* Movant did not file a petition for certiorari. His conviction therefore became final on May 25, 2021—90 days after the Fifth Circuit dismissed his appeal.

Movant filed the current § 2255 motion on February 1, 2022. It is timely.

## II. MOVANT'S ALLEGATIONS AND GOVERNMENT'S RESPONSE

Movant alleges that his attorneys were constitutionally ineffective in the following ways:

1. Trial counsel failed to dispute the definition of synthetic cannabinoid and the drug conversion ratio of 1:167;

2. Trial counsel failed to make an effective argument about the calculation of the quantity of drugs involved;

3. Trial counsel failed to object to the 2-level enhancement for maintaining a premises for the purposes of manufacturing a controlled substance;

4. Trial counsel failed to object to the 2-level enhancement for distributing a controlled substance through mass marketing by means of an interactive computer service;

5. Appellate counsel failed to raise the ineffective assistance of trial counsel claims in grounds 1-4 above on direct appeal; and

6. Appellate counsel filed an appeal without Movant's approval.

The Government responds that Movant's conclusory allegations of ineffective assistance of counsel are inadequately pled, contrary to the record, factually false, subject to the law-of-the-case doctrine, and without merit.

## III. LEGAL STANDARDS

### A. 18 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's

jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id*. at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th

6

Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir.1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Persons convicted of a crime also are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). An appellate counsel's performance is reviewed under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Effective assistance of appellate counsel does not mean that counsel will raise every available non-frivolous ground for appeal. *Evitts*, 469 U.S. at 394; *West v. Johnson*, 92 F.3d 1385, 1396 (5th Cir. 1996). Nor will counsel be deficient for failing to press a frivolous point. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *Evitts*, 469 U.S. at 394.

## IV. ANALYSIS

### A. Ineffective Assistance of Trial Counsel

#### 1. Synthetic cannabinoid definition and 1:167 ratio

Movant first claims that trial counsel was ineffective for failing to dispute "the definition of synthetic cannabinoid" and the drug conversion ratio of 1:167. D.E. 429, p. 4. He states that his counsel "did not have a grasp of the information" relevant to the expansion of the definition of synthetic cannabinoid roughly three weeks after the conspiracy concluded, and the questions he asked the pharmacologist were "irrelevant, useless, and ineffective." *Id.*

When Movant pled guilty to conspiracy to possess with intent to distribute a synthetic cannabinoid mixture, he admitted that the drugs involved satisfied the definition of a synthetic cannabinoid. Additionally, the Fifth Circuit held on appeal that Movant failed to show that the Court's drug quantity determination—including the 167:1 conversion ratio used by the Court—was erroneous. *Townzen*, 837 F. App'x at 313. Because Movant's claims that the drugs involved

7

were not synthetic cannabinoids and that the drug conversion ratio of 1:167 was erroneous would have been meritless, counsel did not render ineffective assistance when he failed to raise these arguments at sentencing. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim"). This claim is denied.

### 2. Drug quantity calculation

Movant next claims that trial counsel was ineffective for "failing to make an effective argument about the calculation of the amount of drugs involved." D.E. 429, p. 5. He states that he "specifically and repeatedly" instructed counsel to argue that Movant should only have been held accountable for the 3.5 kilograms of core chemicals he received, for a total of 584.5 kilograms of converted drug weight and a base offense level of 26.

In his written Objections to the Presentence Investigation Report, trial counsel objected to the calculation of the drug quantity and contested the formula the PSR used for the production of final product from the core chemicals. D.E. 162, pp. 1–4. Counsel argued that the total converted drug weight should have been 698.3 kilograms rather than the 44,524 kilograms in the PSR, and he objected to any calculation of the estimate of what was produced during the course of the conspiracy. *Id.* Trial counsel reurged his objection to the drug quantity determination at sentencing, this time arguing that Movant should be held accountable for roughly 6,000 kilograms of converted drug weight—the lowest drug quantity calculation the Court had heard from any defendant in the case. 12/17/2019 Sent. Tr., D.E. 324 at 4:19–11:10, 20:6-10.

Although trial counsel did not raise the specific argument that Movant should only have been held accountable for the weight of the core chemicals he received and not the final product, the Court nonetheless rejected such an idea, explaining:

> People bought the synthetic material from China, brought it over here to Corpus Christi and then converted it and bought several pounds of potpourri, sprayed it and then sold it in the community.
>
> As we know from *Chapman* and all the other cases that have been used, you can use the entire weight, even though it is diluted and put on a carrier of some type, product, potpourri, or whatever, you weigh it all.

12/17/2019 Sent. Tr. at 12:2-9.

The Fifth Circuit similarly rejected Movant's argument on appeal that "the district court erred in including the weight of the plant and other base material to the total drug quantity before converting it to its marijuana equivalence," and held that Movant "failed to show that the district court plainly erred because it did not exclude the plant or base material from the drug quantity." *Townzen*, 837 F. App'x at 313 (citing *United States v. Koss*, 812 F.3d 460, 467-69 (5th Cir. 2016); U.S.S.G. § 2D1.1, comment. (n.1) & (Notes A, B, and G to Drug Quantity Table)).

Because Movant's claim that he should only have been held accountable for the weight of the core chemical and not the final product would have been meritless, counsel did not render ineffective assistance when he failed to make this argument at sentencing. *See Kimler*, 167 F.3d at 893. This claim is denied.

### 3. Premises enhancement

Movant further argues that trial counsel was ineffective for failing to object to the 2-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the purposes of manufacturing or distributing a controlled substance. Movant states that Done Right "was neither rented or owned by me," and "[d]rugs were never stored or sold here. They were manufactured here a dozen times, but the premises was not maintained for the manufacturing of narcotics." D.E. 429, p. 7.

Martinez testified at sentencing that she first became aware of the manufacturing of narcotics at Done Right in February/March of 2018, and she helped Movant manufacture synthetic

9

cannabinoids in that room between five and ten times. 10/16/2019 Sent Tr., D.E. 306 at 51:3–53:17. During a jail call, Movant told Martinez that Callis should let her continue to use the room at Done Right because they were paying him $2,000 to rent the room to manufacture the drugs. PSR ¶ 14. The Fifth Circuit held that the Court did not err in applying the § 2D1.1(b)(12) enhancement to Martinez, explaining, "Martinez failed to rebut evidence showing she rented and maintained a locked room in another co-conspirator's air-conditioning business and used it to manufacture synthetic cannabinoids." *United States v. Martinez*, 823 F. App'x 284, 286 (5th Cir. 2020). Finally, Movant admits in his § 2255 motion that the drugs were manufactured in that room at Done Right "a dozen times." D.E. 429, p. 7.

Because Movant's claim that the room he rented at Done Right was not being used to manufacture or distribute synthetic cannabinoids would have been meritless, counsel did not render ineffective assistance when he failed to object to the § 2D1.1(b)(12) enhancement at sentencing. *See Kimler*, 167 F.3d at 893. This claim is denied.

### 4. Mass-marketing enhancement

Movant next alleges that trial counsel was ineffective for failing to object to the 2-level enhancement under U.S.S.G. § 2D1.1(b)(7) for distributing a controlled substance through mass marketing by means of an interactive computer service. In his written Objections to the Presentence Investigation Report, trial counsel objected to the mass-marketing enhancement under § 2D1.1(b)(7). D.E. 162, pp. 4–5. Counsel reurged the objection at sentencing, but the objection was overruled. 12/17/2019 Sent. Tr. at 4:12-18, 23:15–26:23. Movant's claim that counsel failed to object to the mass-marketing enhancement is contrary to the record and therefore denied.

### B. Ineffective Assistance of Appellate Counsel

#### 1. IAC claims on appeal

Movant argues that appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claims discussed in Part IV.A, *supra*, on direct appeal. "Sixth Amendment claims of ineffective assistance of counsel should not be litigated on direct appeal, unless they were previously presented to the trial court." *United States v. Isgar*, 739 F.3d 829, 841. Usually, the Court will dismiss such claims without prejudice so a defendant can raise the issue in a § 2255 motion. *Id*. Because Movant did not seek a hearing before the Court based on his ineffective assistance of trial counsel claims, appellate counsel could not raise these issues on direct appeal. This claim is denied.

#### 2. Appeal without Movant's approval

Finally, Movant claims appellate counsel was ineffective for filing an appeal without Movant's "approval." D.E. 429, p. 8. Movant states that he and appellate counsel "discussed avenues for appeal. He cautioned me that in some cases its possible that I could get more time because of issues raised on appeal. He told me that he would send me some papers to sign acknowledging this risk, then we would speak more and fine tune our objections and arguments for direct appeal." *Id.* However, a year went by with no contact from counsel, after which Movant received a letter from the Fifth Circuit upholding his sentence.

Appellate counsel's failure to raise certain issues on appeal does not deprive a petitioner of effective assistance where the petitioner does not show the existence of any trial errors that "contain sufficient merit–actual or arguable–that his appellate counsel can be faulted for not having raised them." *Hooks v. Roberts*, 480 F.2d 1196, 1197 (5th Cir. 1973). Appointed appellate counsel also is not required to consult his client about the legal issues to be presented on appeal. *Id.* at 1197 ("[W]e lay to rest appellant's notion that appointed counsel prosecuting an appeal on an adequate

11

trial record is constitutionally required to confer with his client about the legal issues to be presented on appeal."). Finally, in order to show prejudice, a petitioner must establish that, but for counsel's deficient performance, he would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000).

Despite having no legal obligation to do so, appellate counsel consulted with Movant about the issues that might be raised on appeal. Movant states that counsel should have raised the ineffective assistance of trial counsel claims discussed in Part IV.A, *supra*; however, for the reasons stated above, these claims would have been dismissed. Movant has failed to show that appellate counsel's performance was deficient or that, but for counsel's performance, he would have prevailed on appeal. This claim is denied.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Movant has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R<span>ULE</span> 11, § 2255 R<span>ULES</span>.

A certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved

differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, the Government's Motion for Summary Judgment (D.E. 443) is **GRANTED**, and Movant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 429) is **DENIED**. Movant is further **DENIED** a Certificate of Appealability.

It is so **ORDERED** this 8th day of November, 2022.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE